## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**OSCAR OMAR REYES-ESPINOZA,**

      **Plaintiff,**

**v.**                                                  **Case No. 2:21-CV-00457 MV/JHR**

**BOARD OF COUNTY COMMISSIONERS**
**OF DOÑA ANA COUNTY, CHRIS BARELA,**
**FORMER DIRECTOR OF DOÑA ANA COUNTY**
**DETENTION CENTER, and DETENTION CENTER**
**EMPLOYEES JACK GONZALES,**
**ENRIQUE PEREZ, JULIO BARRAGAN,**
**ARTURO PEREA, and JESSICA LUJAN,**

      **Defendants.**

### COUNTY DEFENDANTS' MOTION TO DISMISS

MYNATT MARTÍNEZ SPRINGER P.C. (Damian L. Martínez and Haley R. Grant), counsel for the Defendant Board of County Commissioners of Doña Ana County, Chris Barela, Former Director of Doña Ana County Detention Center, Detention Center Employees Jack Gonzales, Enrique Perez, Julio Barragan, Arturo Perea, and Jessica Lujan ("County Defendants") hereby submit this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Pursuant to D.N.M. LR-Civ 7.1(2), undersigned counsel sought the position of Plaintiff's counsel via phone and email on May 19, 2021 but was unable to obtain Plaintiff's counsel's position. Thus, based on the relief requested it is believed that the motion is opposed.

### INTRODUCTION

Plaintiff somehow expects County Defendants to intuit the factual allegations raised against them without any assistance from the Complaint.  Plaintiff is also not entitled to raise any of the claims in the Complaint.  Plaintiff's Complaint arises from his alleged assault by other inmates at the Dona Ana County Detention Center ("DACDC") in Las Cruces, New Mexico on

April 13, 2018.  [Doc. 1-1, ¶ 18].  Plaintiff's claims contend that County Defendants failed to prevent the assault, provide him with adequate medical care, and release or timely transfer him to the custody of the United States Marshal Service all in violation of his rights to due process.  [Doc. 1-1].  Plaintiff filed his Complaint in New Mexico Third Judicial District Court on April 13, 2021, service was waived on April 27, 2021 [Doc. 1-3], and the County Defendants removed the Complaint to the United States District Court for the District of New Mexico on May 14, 2021.  [Doc. 1].

Pleading standards and Section 1983 case law is clear that County Defendants are entitled to fair notice of the wrongdoing Plaintiff alleges against them including who did what and to whom.  The Complaint only generally names "defendants" with vague allegations that County Defendants violated his due process rights.  This is not fair notice.  Additionally, Plaintiff is not entitled to any of the due process rights he brings in his Complaint.  Plaintiff has no due process right to early release or transfer to a different facility during the term of his incarceration as he contends in Count I.  [Doc. 1-1, ¶¶ 29 – 32].  Plaintiff commits similar errors in Counts II and III.  [Doc. 1-1, ¶¶ 33 – 41].

The due process challenges to County Defendants' failure to protect Plaintiff and the alleged denial of adequate medical care in Counts II and III are misplaced, because Plaintiff cannot bring these due process claims given his status as a convicted prisoner at the time of the incident.  Certainly, Plaintiff cannot overcome County Defendants' qualified immunity on either count without an initial showing that they violated his constitutional rights.  Plaintiff further fails to name or describe the conduct each County Defendant purportedly committed to allow County Defendants to respond or defend against his claims in either Count II or III.

Finally, to the extent Plaintiff's claims are based upon injuries he suffered on April 12, 2018, these claims are barred by the expiration of the three-year statute of limitations applicable to Section 1983 claims in New Mexico.  Under a liberal view of the facts in the Complaint, the Court must dismiss all claims with prejudice.

## LEGAL STANDARDS

### I.      Fed. R. Civ. P. 12(b)(6) and Notice Pleading

Federal Rule of Civil Procedure 12(b)(6) enables Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." When a party moves to dismiss claims under Rule 12(b)(6), the Court's function is not to weigh potential evidence, but to determine whether the complaint alone is sufficient to assert a claim for which relief may be granted. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

To survive a motion to dismiss, the complaint must contain allegations of fact that, when taken as true, "state a claim of relief that is plausible on its face." *Kansas Pen Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  In construing a complaint, the Court accepts as true only well-pleaded factual allegations, not legal conclusions.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). Additionally, the court must accept as true the complaint's factual allegations and view them in the light most favorable to the nonmoving party.  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 126, 1236 (10th Cir. 1999).

Further, the Plaintiff must provide particular factual accusations to support his claims.  *See Kansas Pen Gaming, LLC*, 656 F.3d at 1214.  Indeed, assertions without additional factual support will not overcome a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Similarly, speculative complaints that do not state plausible claims will not defeat a motion to dismiss under Rule

12(b)(6).  *See Kansas Pen Gaming, LLC*, 656 F.3d at 1215.  At a minimum, Plaintiffs must "nudge

their claims across the line from conceivable to plausible" to survive a motion to dismiss and

> the mere metaphysical possibility that some plaintiff could prove some set of facts
> in support of the pleaded claims is insufficient; the complaint must give the court
> reason to believe that this plaintiff has a reasonable likelihood of mustering factual
> support for these claims.

*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Twombly*, 550

U.S. at 570).  In a civil rights case, a plaintiff must specifically allege facts establishing a particular

defendant's role in violating their civil rights.

> As the Tenth Circuit explained in *Robbins v. Oklahoma*:

> > In § 1983 cases, defendants often include the government agency and a number
> > of government actors sued in their individual capacities. Therefore, it is
> > particularly important in such circumstances that the complaint make clear
> > exactly *who* is alleged to have done *what* to *whom*, to provide each individual
> > with fair notice as to the basis of the claims against him or her, as distinguished
> > from collective allegations against the state.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1249–1250 (10th Cir. 2008) (emphasis in original). To be

sure, the Supreme Court of the United States has held that, in all civil cases, claims which do not

specify a specific time, place or person and consist of merely conclusory allegations leave

defendants seeking to respond with "little idea of where to begin." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 564, n. 10 (2007); *Robbins,* 519 F.3d at 1247.

**II.      Qualified Immunity**

Qualified immunity may be raised in a Rule 12(b)(6) motion.  *Thomas v. Kaven*, 765 F.3d

1183, 1194 (10th Cir. 2014).  Review of a Rule 12(b)(6) motion considers qualified immunity

based on "the defendant's conduct *as alleged in the complaint*." *Id*. (quoting *Behrens v. Pelletier*,

516 U.S. 299, 309 (1996)).  To defeat qualified immunity, the plaintiff must satisfy a "strict two-

part test" by marshaling record evidence to show: "(1) the defendant violated a constitutional right

and (2) the constitutional right was clearly established." *Mann v. Hyler*, 918 F.3d 1109, 1116 (10th

Cir. 2019) (citing *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012)).  The court has discretion to analyze the two prongs in whatever order "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018).

Qualified immunity is a heavy burden to carry and "protects all but the plainly incompetent or those who knowingly violate the law."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *see Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); (Every reasonable officer must have understood that an officer's conduct was a violation tantamount to clearly established law.); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (Clearly established case law must answer the "constitutional question beyond debate.").  An officer's immunity shields them from liability "when [they] make[] a decision that, even if constitutionally deficient, reasonably apprehends the law governing the circumstances [they] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)) (Qualified immunity protects "officers from the sometimes 'hazy border between excessive and acceptable force.'").

A plaintiff must either offer Supreme Court or Tenth Circuit on-point decisions, or the clearly established weight of authority from other circuits, to support their position.  *Storey v. Taylor*, 696 F.3d 987, 992 (10th Cir. 2012).  "It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

In this analysis, courts assess "whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308. "General statements of the law are not

inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent." *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  In "rare obvious cases where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," courts may find a waiver of an officer's qualified immunity.  *Wesby*, 138 S. Ct. at 590.

## ARGUMENT

**I.      The Court must dismiss Count I with prejudice for failing to state claims against Mr. Barela in his official capacity and the County.  Count I does not allege that a custom or policy caused his due process violation, nor does he hold an underlying due process right to release or transfer during his term of his incarceration.**

To pursue claims against the County and Mr. Barela in his official and individual capacities, Plaintiff must raise viable municipal liability claims based upon a policy or custom that caused an underlying constitutional violation.  Plaintiff identifies no such policy or custom nor does he hold the underlying due process right to release or transfer to support his municipal liability claims.

**A.  Plaintiff has not challenged the existence of any policy or custom that caused an underlying violation of his rights, and his municipal liability claims fail against the County and Mr. Barela in his official capacity fail.**

Plaintiff's claims against Mr. Barela in his official capacity and the County collapse.  To be clear, to the extent Plaintiff has named Mr. Barela in his official capacity, the claim is only raised against the County.  *See Brown v. Montoya*, 662 F.3d 1152, 1164, n. 8 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

"Municipalities can be liable under 42 U.S.C. § 1983 only for their own unlawful acts." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017).  Plaintiffs must prove three elements for a claim including "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v.*

*City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).  A policy or custom manifests in several forms including:

> *a formal regulation* or policy statement, *an informal custom that amounts to a widespread practice*, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees.

*Pyle*, 874 F.3d at 1266 (emphasis added); *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010) (Customs must be widespread practices that, "although not authorized by written law or express municipal policy, [are] so permanent and well settled as to constitute [] custom[s] or usage[s] with the force of law.").

To establish a custom, municipal employees' actions must be "continuing, persistent[,] and widespread" proven through evidence that similarly situated individuals were mistreated in a similar way.  *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).  To prove causation, plaintiffs must show that a municipal policy or custom directly caused an injury, and that the policy or practice is closely related to the violation.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Schneider*, 717 F3d. at 770.

A plaintiff's final hurdle is showing that the municipality acted with the requisite state of mind, i.e., deliberate indifference.  *See Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. at 407.  For facially valid municipal actions, plaintiffs must show that the municipality chose the action with deliberate indifference as to known or obvious consequences of the action.  *See id.*  Deliberate indifference can manifest through actual or constructive notice that a municipality's action or omission was "substantially certain to result in a constitutional violation, and [the municipality] consciously or deliberately chooses to disregard the risk of harm."  *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003).

Plaintiff does not identify any violative policy or custom nor does he describe how such policies or customs caused his due process deprivations. [Doc. 1-1, ¶¶ 29 – 32]; *see Pyle*, 874 F.3d at 1266; *Schneider*, 717 F.3d at 769. None of the counts in the Complaint make any mention of deliberate indifference or notice to suggest that the County consciously or deliberately disregarded a risk to Plaintiff's safety. [Doc. 1-1, ¶¶ 29 – 32]; *see Carr*, 337 F.3d at 1229. Before even engaging with whether he holds a due process right, Plaintiff's claims against the County and Mr. Barela are dead on arrival and must be dismissed with prejudice.

### B. Plaintiff has no underlying due process right that would support a municipal liability claim against either the County or Mr. Barela in his individual capacity.

Plaintiff's municipal liability claims against the County and Mr. Barela in his individual capacity collapse without a cognizable due process violation. Plaintiff held no right to release or transfer to another facility while he was within the term of his criminal sentence, and he fails to state clearly established violations of his due process rights against County Defendants. [Doc. 1-1, ¶¶ 7, 10]. As the Complaint provides, Plaintiff was convicted of "unlawfully crossing the international border," leading to his incarceration at DACDC. [Doc. 1-1, ¶ 1]. As a convicted prisoner, Plaintiff cannot challenge the fact or timeliness of his transfer to another institution or his non-release unless he was beyond the term of his incarceration.

"[A] prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to [] a transfer[]." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 – 563 (10th Cir. 1990). Similarly, "[t]here is not constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1212 – 1213 (10th Cir. 2009) (quoting *Greenholz*, 442 U.S. at 7). A prisoner's preference for

release "is indistinguishable from the initial resistance to being confined... Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Id.*

> **1. The municipal liability claims against the County fail without a supporting underlying constitutional violation.**

Plaintiff's claim cannot move forward because, he failed to assert a viable due process claim to support a municipal liability claim against the County. *See Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir. 2009) ("To succeed in a § 1983 claim against a municipality, a plaintiff must show two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation."). To be sure, the Complaint is disjointed and vague leaving the County to guess as to what claims are raised against the individual officers. Regardless, the Complaint fails to nudge Plaintiff's municipal liability claim from conceivable to plausible. *See Ridge at Red Hawk, LLC*, 493 F.3d at 1177. Plainly, Counts I, II, and III fail to state a municipal liability claim for which relief can be granted against the County.

> **2. Without alleging a cognizable underlying constitutional violation, Plaintiff cannot proceed against Mr. Barela in his individual capacity and he is entitled to qualified immunity.**

In his individual capacity, Mr. Barela is entitled qualified immunity without a facially valid clearly established constitutional violation asserted against him. Simply put, Plaintiff has no due process right which would salvage his Count I claims related to his alleged untimely transfer and non-release. *See Greenholz*, 442 U.S. at 7; *Gee*, 629 F.3d at 1189; *Straley*, 582 F.3d at 1212 – 1213. Without a constitutional due process right raised in any count, it follows that Plaintiff has no clearly established right which would waive Mr. Barela's qualified immunity. Accordingly, the Court must enter qualified immunity against Count I, and dismiss its claims with prejudice. *See Wesby*, 138 S. Ct. at 590.

II.     **The Complaint says nothing about who did what to cause Plaintiff's injury leaving County Defendants without notice to defend against his claims.  Plaintiff also has no valid clearly established due process failure to protect claims, and the Court must dismiss Count II with prejudice on qualified immunity.**

As a result of his conviction, Plaintiff cannot raise due process failure to protect claims when these claims are only available to pre-trial detainees awaiting a determination of guilt. Convicted prisoners, on the other hand, may only raise Section 1983 claims for an officer's failure to protect them through the Eighth Amendment to the United States Constitution.  Plaintiff also neglected to identify which of the County Defendants failed to protect him as alleged in Count II which ultimately compels the dismissal of his Count II claims with prejudice for failing to state clearly established violations.

A.     **Plaintiff's general naming of all County Defendants without indicating what each did wrong falls short of notice pleading requirements.**

Plaintiff named six defendants in this case without a single fact showing that they were involved in causing his injuries or how they caused them.  [Doc. 1-1].  Collectively referring to "defendants" is not enough to place County Defendants on fair notice to defend against Plaintiff's claims which the Court must dismiss with prejudice.  [Doc. 1-1]; *see e.g.*, *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 – 1213 (10th Cir. 2019) ("To the extent [the plaintiff] argues that his collective characterization of the defendants is sufficient to sustain any personal-capacity claims, [] his argument is insufficient.  He has not explained which of the prison-official defendants are liable for what improper conduct.") (citing *Robbins*, 519 F.3d at 1249 – 1250).

"[C]ontext matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case." *Robbins*, 519 F.3d at 1249.  In Section 1983 cases, government agencies are often named alongside government actors sued in their individual capacities.  *Id*. at 1249 – 1250.  For that reason,

> it is particularly important [] that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Id*. at 1250 (emphasis in original); *Twombly*, 550 U.S. at 564, n. 10 (In all civil cases, claims which do not specify a specific time, place or person and consist of merely conclusory allegations leave defendants seeking to respond with "little idea of where to begin.").  Without a clue as to who did what, the ultimate basis for Plaintiff's Count II claims are a mystery.  *See id.*  Simply, the County Defendants are entitled to know some factual details of what is raised against them, and Plaintiff has not met this burden.  *See id.*  Thus, the Court must dismiss Count II with prejudice.

### B.  Plaintiff is not a pretrial detainee and, as a convicted prisoner, he could not raise Fourteenth Amendment due process failure to protect claims.

Only pretrial detainees may raise failure to protect claims under the Due Process Clause in the Fourteenth Amendment.  The language of the Eighth Amendment's Cruel and Unusual Punishment Clause and that of the Fourteenth Amendment's Due Process Clause:

> differs, and the nature of the claims often differs.  And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less "maliciously and sadistically."

*Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).  "The Supreme Court has explained that "the treatment a prisoner receives… and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."" *Contreras v. Dona Ana Cty. Bd. of Comm'rs*, 965 F.3d 1114, 1116 (10th Cir. 2020) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  Only under the Eighth Amendment, can prisoners raise claims that prison officials failed to "take reasonable measures to guarantee the safety of inmates." *Id*. at 1117; *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (The Eighth Amendment "protect[s] those convicted of crimes, and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.").

Without properly describing conduct committed by County Defendants or proof of Plaintiff's due process right, Plaintiff cannot prove a clearly established violation, and County Defendants are entitled to qualified immunity. *See Wesby*, 138 S. Ct. at 590. Thus, the Court must dismiss Count II with prejudice.

### III.   To the extent Plaintiff challenges injuries sustained on April 12, 2018, all related Section 1983 claims lapsed on the expiration of the three-year statute of limitations on April 12, 2021, and the Court must dismiss Count II for all such allegations for untimely filing.

Insofar as Plaintiff's claims are related to injuries suffered on April 12, 2018, they are no longer valid under the applicable statute of limitations. The text of Section 1983 does not contain a statute of limitations. As a result, the Supreme Court in *Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985), announced that

> [w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.

*Id.* In keeping with this rule, the *Wilson* court held that the limitations period that best fits Section 1983 claims is the state limitations statute for personal-injury actions. *Id.* at 280. In New Mexico, Section 1983 claims must be brought under the three-year limitations period for personal injury claims. *Id.* at 264; N.M. Stat. Ann. § 37-1-8 (2014) (prescribing a three-year statute of limitations for personal injuries). Plainly, Plaintiff's claims are untimely filed to the extent they relate to the April 12, 2018. [Doc. 1].

### IV.   The Court must dismiss Count III with prejudice for failing to describe conduct committed by County Defendants to place them on fair notice of Plaintiff's allegations and because Plaintiff has no clearly established due process right to the challenge the alleged denial of his medical care.

As is the case with Count II, Count III only refers to County Defendants in the aggregate leaving them without fair notice of the claims brought against them. As a convicted prisoner,

Plaintiff also held no right to the provision of adequate medical treatment under the Due Process

Clause.  Accordingly, the Court must dismiss Count III's claims with prejudice.

**A. Count III does not identify specific persons or conduct to place County Defendants on notice of the factual allegations against them.**

Plaintiff repeats the same mistake made in Count II in his failing to describe County

Defendants conduct and how they can be liable for due process violations.  Therefore, he has not

provided fair notice of his claims, and the Court must dismiss them with prejudice.  *See Twombly*,

550 U.S. at 564, n. 10; *Robbins*, 519 F.3d at 1249 – 1250 (Claims must described which defendant

is alleged to have done what to whom.); *see e.g.*, *Williams*, 928 F.3d at 1212 – 1213 (Generalized

references to the defendants' conduct was not enough without showing which prison official was

responsible for what conduct.) (citing *Robbins*, 519 F.3d at 1249 – 1250).

**B. As a convicted prisoner, Plaintiff cannot raise due process claims for denial of adequate medical care, and he cannot overcome County Defendants' qualified immunity.**

Plaintiff's conviction leading to his stay at DACDC precludes his right to raise due process

claims for failure to provide medical care.  As with failure to protect claims, convicted prisoners

can only raise these claims through the Eighth Amendment, and the Court must dismiss Count III

with prejudice for failure to state claims against County Defendants.

"[T]he Due Process Claims governs a pretrial detainee's claim of unconstitutional

conditions of confinement." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  For prisoners,

they may only bring claims for denials of medical care under the Eighth Amendment.  *See Perkins*

*v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("Prison officials violate the Eighth

Amendment when they are deliberately indifferent to the serious medical needs of prisoners in

their custody."); *Romero v. Bd. of Cty. Comm'rs*, 202 F. Supp. 1223, 1263 (D. N.M. Aug. 15,

2016) (non-precedential) ("[T]he Eighth Amendment is the proper avenue for allegations of deliberate indifference to a serious medication condition in the prisoner context.").

Plaintiff's Complaint makes clear that he is only raising a due process right to challenge the purported denial of his medical care.  Consequently, the Court must dismiss his claims with prejudice for failing to show that he is raising valid and clearly established due process violations to overcome County Defendants' qualified immunity.  *See Wesby*, 138 S. Ct. at 590.

## CONCLUSION

Based upon Plaintiff's failure to describe the wrongful conduct that County Defendants' allegedly committed and for bringing legal claims that he is not legally entitled to raise, the Court must dismiss all claims for failure to state claims that would overcome County Defendants' qualified immunity.

Respectfully submitted,

MYNATT MARTÍNEZ SPRINGER P.C.

DAMIAN L. MARTÍNEZ
New Mexico Bar No. 14678
HALEY R. GRANT
New Mexico Bar No. 145671
P.O. Box 2699
Las Cruces, New Mexico 88004-2699
(575) 524-8812
dlm@mmslawpc.com
hrg@mmslawpc.com
*Attorneys for Defendants*


**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on the 21st day of May 2021, a copy of the foregoing pleading was served on the following via CM/ECF:

    Joseph P. Kennedy
    KENNEDY KENNEDY & IVES, PC
    1000 2ND Street NW
    Albuquerque, NM   87102
    jpk@civilrightslaw.com

 

_____
DAMIAN L. MARTÍNEZ